**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
GARY LABARBERA, et al.,

|                          |                         |
|--------------------------|-------------------------|
| Plaintiffs,              | **REPORT AND**          |
|                          | **RECOMMENDATION**      |
| - against -              |                         |
|                          | CV 04-1623 (JS) (JO)    |
| TAFF TRUCKING CORP.,     |                         |
|                          |                         |

                                    Defendant.
--------------------------------------------------------X

**JAMES ORENSTEIN, Magistrate Judge:**

On April 20, 2004, plaintiffs Gary LaBarbera and Theodore King as Trustees and

Fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local

282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the Local 282 Vacation and

Sick Leave Trust Fund (the "Funds") commenced this action against defendant Taff Trucking

Corp., Inc. ("Taff").  Docket Entry ("DE") 1 ("Complaint").  Plaintiffs seek delinquent

contributions, prejudgment interest, liquidated damages, and attorneys' fees from Taff for its

failure to make contributions to the Funds as required under the Employee Retirement Income

Security Act ("ERISA"), 29 U.S.C. §§ 1001, et seq.  During the course of discovery counsel for

Taff requested to withdraw as counsel of record on the basis of Taff's representation that they

were no longer in business.  DE 10.  The Honorable Joanna Seybert, United States District Judge

granted counsel's application and gave Taff sixty days to retain new counsel and in the event that

Taff failed to do so, gave the Funds permission to move for default judgment.  DE 13, DE 17.

Taff failed to retain new counsel and the Funds so moved.  DE 20.  Judge Seybert referred the

matter to me for a report and recommendation as to whether default judgment should be entered

and for a determination of appropriate damages.  DE 22.  I now make that report and respectfully

recommend that default judgment be entered and that plaintiffs be awarded a total of $74,099.70.

I.    Background

      A.    Procedural History

The Funds filed their complaint on April 20, 2004, DE 1, and Taff filed its answer on June 10, 2004. DE 6. I held an initial conference on August 5, 2004 and on the same day issued a case management and scheduling order. DE 8, DE 9.

Over six months later, by letter dated February 22, 2005, counsel for Taff made an application to withdraw as counsel of record. DE 10. Counsel stated that he was informed by his client that they were "no longer in business" and that he should "cease all further efforts to defend this action." *Id*. Judge Seybert granted counsel's application by endorsed order on March 10, 2005. *See* DE 13 (docketed March 13, 2005). In response to a further request by the Funds, Judge Seybert allowed Taff 60 days to retain new counsel and further ordered that the court would entertain a motion for a default judgment if Taff did not secure new counsel within that time. *See* DE 17 & endorsed order.

By letter dated March 9, 2005 the Funds advised me of Taff's counsel's pending withdrawal and their concern regarding the continuation of their case. By endorsed order dated March 11, 2005 I scheduled a conference to discuss the issue. *See* DE 12 (docketed March 10, 2005). At a conference on March 30, 2005, the Funds informed me that they were unable to reach a representative of Taff, and at my direction counsel called Mr. Tishman, defendant's recently relieved counsel. *See* DE 16. After refusing to divulge the contact information of Mrs. Florence Minichino, Taff's principal, Mr. Tishman put her on the conference call where she stated that the company was no longer in business and refused to communicate with the Funds further for the purpose of verifying her assertion. *Id.* I scheduled a later conference to allow the

Funds to report further on the status of the case. *Id.* Ms. Minichino attended that follow-up conference on May 5, 2005, and again stated that Taff was no longer in business and did not have any assets. *See* DE 19. The Funds indicated that they would move for default judgment. *Id.*

The Clerk noted Taff's default on June 30, 2005, and the Funds moved for a default judgment the same day. DE 20, DE 21. On July 8, 2005 Judge Seybert referred the motion to me for a report and recommendation as to whether default should be entered and, and if so, to the appropriate amount of damages. DE 22.

B.     The Agreements

Taff and Local 282, (a labor organization representing employees in an industry affecting commerce), were parties to a collective bargaining agreement ("CBA") entitled the New York City Heavy Construction and Excavating Contract, which covered the period from July 1, 2002 through June 30, 2006. *See* Complaint ¶ 11; DE 20-2 (Declaration of Elizabeth O'Leary) ("Dec.") ¶ 14 & Ex. C (CBA). Taff was previously bound by the CBA for the period of July 1, 1999 through June 30, 2002. *See* Complaint ¶ 11; Dec. ¶ 14. The Funds are governed by a contract referred to as that Restated Agreement and Declaration of Trust, which has been incorporated by reference into the CBA. *See* DE 20-2, Ex. B (the "Trust Agreement"); *see also* CBA § 13(G).

Pursuant to Article IX, Section 1(c) of the Trust Agreement, Taff was required to submit detailed remittance reports if requested by the Funds together with each of the monthly contributions they were required to make on behalf of covered employees. Complaint ¶ 14; Trust Agreement Art. IX, § 1(c). These reports provide information regarding the number of hours employees covered by the CBA worked for the month as well as the employers monthly

contribution to each fund.  Complaint ¶ 14.  The Trust Agreement also authorizes the Funds "at any time [to] audit the pertinent books and records of any employer in connection with [the CBA]."  Trust Agreement Art. IX, § 1(d).  When an audit indicates that an employer has been delinquent, the Trust Agreement, in addition to requiring the employer to pay the amount delinquent, requires the employer to pay "interest, at the rate specified in Section 5-501 of the General Obligations Law of the State of New York, ... on the monies due to the Trustees from the first day of the month when the payment was due to the date when payment was made, together with attorney's fees, auditor's fees and liquidated damages."  Trust Agreement Art. IX, § 3.

       C.     The Funds' Claim for Damages

The Funds conducted an audit of Taff's books and records for the period of August 1, 2001 through June 27, 2003 and the results were reported in an audit report dated December 4, 2003.  *See* DE 20-2, Ex. D ("Audit Report").  The Audit Report disclosed that Taff failed to make payments in accordance with the CBA, and as a result the Funds allege that Taff owes $48,856.55 in delinquent contributions, interest in the amount of $22,665.69, and liquidated damages in the amount of $22,665.69.  *See* Dec. ¶ 26.  Additionally, Taff claims $1,002.50 in audit fees, $5,948.50 in attorneys' fees and costs, and additional interest and liquidated damages continuing to accrue beginning June 1, 2005.

## II.    Discussion

       A.     Default Judgment Standard

Upon the entry of default, a party concedes all well pleaded factual allegations, except damages.  *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974); Fed. R. Civ. P. 8(d)).  A

plaintiff must prove damages if such damages are neither "susceptible of mathematical computation" nor liquidated as of the default. *Id*. (citations omitted); *see* Fed. R. Civ. P. 55(d)(2). An evidentiary hearing is not required so long as there is a basis for the damages awarded. *Transatlantic Marine Claims Agency v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (citations omitted). Detailed affidavits and other documentary evidence provide this basis. *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991).

In support of the motion, plaintiffs submitted the declaration of Elizabeth O'Leary. *See* DE 20-2. Additionally, plaintiffs submitted all relevant agreements and the complete Audit Report. Upon this record, I find no need for an evidentiary hearing. *See Transatlantic Marine Claims Agency*, 109 F.3d at 111; *Action S.A.*, 951 F.2d at 508.

B.     ERISA and Plaintiffs' Recovery

As the Second Circuit has stated, "ERISA promotes the interests of employees and their beneficiaries .... by controlling the administration of [benefit] plans through rules regarding participation, funding and vesting, and by promulgating uniform standards for reporting, disclosure and fiduciary responsibility. It also provides for administrative oversight, imposes criminal penalties and establishes a civil enforcement scheme." *Plumbing Industry Board, Plumbing Local Union No. 1 v. E.W. Howell Co., Inc.*, 126 F.3d 61, 66 (2d Cir. 1997) (citing *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 651 (1995)); *see* 29 U.S.C. § 1001 (stating congressional findings that, among other things, safeguards must be provided with respect to the establishment, operation, and administration of employee benefit plans in the interests of employees and their beneficiaries).

Employers obligated to make contributions under the terms of a multi-employer plan or a collective bargaining agreement must make such payments pursuant to the terms and conditions of the plan or agreement. *See* 29 U.S.C. § 1145. This requirement applies only to those employers that are "obligated to make contributions." The duty to pay benefits must spring from a source other than ERISA. *Cement and Concrete Workers Dist. Council v. Lollo*, 35 F.3d 29, 36 (1994) (citing *Mass. Laborers' Health & Welfare Fund v. Starrett Paving Corp.*, 845 F.2d 23, 25 (1st Cir. 1988) (Breyer, J.)). In this case, Taff was obligated by the terms of the CBA (a non-ERISA source) to make contributions to the Funds. *See* Complaint ¶ 5; *Cement and Concrete Workers Dist. Council*, 35 F.3d at 36.

Taff's failure to make the required contributions entitles the Funds to recover an award prescribed by ERISA that includes (1) the unpaid contributions; (2) interest on the unpaid contributions; (3) an amount equal to the greater of the interest or liquidated damages up to 20 percent of the unpaid contributions; and (4) reasonable attorneys' fees and costs of the action. 29 U.S.C. § 1132(g)(2); *see also* Trust Agreement Art. IX, Sec. 3 (prescribing similar award components). I discuss each component of the prescribed award in turn below.

1.      Unpaid Contributions

The Audit Report upon which plaintiffs rely sufficiently demonstrates that Taff owes a total of $45,856.57 in unpaid contributions to the Funds. However, there is a discrepancy of two pennies between that amount and the amount of $45,856.55 in unpaid contributions that the Funds have actually requested. *See* DE 20-1 (Plaintiffs' Statement Of Amounts Due); Dec. ¶¶ 22, 26. In the interest of fairness, I recommend adopting the slightly lower latter amount in fixing the award of unpaid contributions.

2.     Pre-judgment Interest on the Unpaid Contributions.

Article IX, Section 3 of the Trust Agreement provides that the Funds are entitled to an interest award on the unpaid contributions "at the rate specified in Section 5-501 of the General Obligations Law of the State of New York ... on the monies due" to them.  The cited provision calls for an interest rate of six percent unless a different rate is prescribed pursuant to a separate statute that sets a maximum interest rate of 16 percent. N.Y. Gen. Oblig. Law § 5-501(1); N.Y. Banking Law § 14-a(1).  Plaintiffs seek that maximum interest rate, but neither the law nor fairness requires such relief, which would constitute a windfall for the plaintiffs.  As I have repeatedly concluded in previous cases involving these same plaintiffs, the presumptive rate of six percent is fair and will provide adequate compensation.[1]   Applying the six percent rate to the $45,856.55 in unpaid contributions since October 1, 2001 (the accrual date suggested by plaintiffs), I recommend that the Funds be awarded the amount of $10,769.20 in prejudgment interest (as of February 28, 2006) on the unpaid contributions.[2]

---

[1]  *See LaBarbara, et al. v. Z & Z Trucking, Inc.*, CV 03-5520 (ADS) (JO), Report and Recommendation at 8, Docket Entry 18 (E.D.N.Y. Jul. 26, 2005), *adopted in its entirety without objection*, *id*. DE 25 (E.D.N.Y. Sep. 15, 2005); *LaBarbara, et al. v. Tile King, Inc.*, CV 04-0358 (DRH) (JO), Report and Recommendation at 5, Docket Entry 23 (E.D.N.Y. Dec. 30, 2004), *adopted in its entirety without objection*, *id*. DE 20 (E.D.N.Y. Jan. 18, 2005).  I trust that the plaintiffs, having had the benefit of reading my analysis for a third time, now understand it.  In the future, I intend to reduce the recommended award for any similar default judgment by recommending the disallowance of attorneys' fees associated with these plaintiffs advancing the same theory of interest yet again.

[2]  Pursuant to Section 3 of Article IX of the Trust Agreement, the right to recover interest on unpaid contributions accrues on "the first day of the month when the payment was due[.]"  Section 1(b) of Article IX establishes a presumptive due date for such payments and also provides for the parties to set a different due date (within certain limits) by agreement in the CBA.  The record before me is not sufficient to establish the date on which interest began to accrue according to the terms of Article IX, but does support the proposition that the date was not later than October 1, 2001.

3.     Additional Damages

As noted above, both ERISA and Article IX of the Trust Agreement provide for an additional award equal to the greater of the interest award or 20 percent of the unpaid contributions.  *See* 29 U.S.C. § 1132(g).  The latter amount is $9,171.31, and therefore plaintiffs are entitled to an additional award equal to the award of interest.  I therefore recommend $10,769.20 in additional damages.

4.     Attorneys' fees and costs

A request for attorneys' fees must be supported by contemporaneous time records that indicate the hours expended and the nature of the work performed.  *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147-1148 (2d Cir. 1983).  In determining the reasonableness of an attorneys' fees award, the Second Circuit employs the lodestar method: multiplying the number of hours reasonably expended by a reasonable hourly rate.  *See King v. JCS Enterprises, Inc.*, 325 F.Supp. 2d 162, 166 (E.D.N.Y. 2004) (citing *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004); *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)).

Plaintiffs here seek attorneys' fees totaling $5,738.50 for 21 hours of work, and have sufficiently documented the basis for that request with billing records.  *See* Dec. Ex. E (contemporaneous time records).  The rates specified range from $265 to $340 per hour for attorneys and $75 for a paralegal.  *Id.*  I find the number of hours expended to be reasonable but do not so find for the attorneys' hourly rates.  *See McDonald v. Pension Plan of NYSA-ILA Pension Trust Fund,* WL 1974054, at *3 -4 (S.D.N.Y. April 27, 2002) (awarding a rate of $325 per hour in an ERISA action); and *see Levy v. Powell*, 2005 WL 1719972, *9 (E.D.N.Y. July 22, 2005) (stating that partner's in civil right cases in this district have been awarded between $225

and $300).  I instead recommend a rate of $300 per hour for partner Bruce S. Levine and $265 for associate Elizabeth O'Leary.  *See* Dec. ¶ 30.  Based on these rates I recommend adjusting the fee request to $5,492.50, as itemized below:

| Attorney | Hours | Requested | | Recommended | |
|---|---|---|---|---|---|
| | | Hourly Fee | Total | Hourly Fee | Total |
| O'Leary | 11.50 | $265 | $3,047.50 | $265 | $3,047.50 |
| O'Leary | 6.75 | $300 | $2,025.00 | $265 | $1,788.75 |
| Levine | 1.75 | $300 | $525.00 | $300 | $525.00 |
| Levine | 0.25 | $340 | $85.00 | $300 | $75.00 |
| Ellis (Paralegal) | 0.75 | $75 | $56.25 | $75 | $56.25 |
| TOTAL | 21.00 | | $5,738.75 | | $5,492.50 |

The Funds also seek reimbursement for $1,002.50 in auditing fees, a $150 in filing fee, and $59.75 in process server fees.  The auditing and filing fee is appropriate pursuant to Section 3 of Article IX of the Trust Agreement and the process server fee is permitted under Local Civil Rule 54.1(c)(10).  All are properly documented in the plaintiffs' supporting papers.  *See* Dec. Ex. E, F.  I therefore recommend that plaintiffs be awarded costs in the amount of $1,212.25.

III.    Recommendation

Based on the foregoing, I recommend that plaintiffs recover from Taff the amount of **$74,099.70**, as itemized below, and that judgment be entered accordingly:

(1)    **$45,856.55** in unpaid contributions;

(2)    **$10,769.20** in prejudgment interest on the unpaid contributions (October 2001 through February 2006);

(3)     **$10,769.20** in liquidated damages;

(4)     **$5,492.50** in attorneys' fees; and

(5)     **$1,212.25** in costs.

IV.     Objections

Plaintiffs are directed to serve a copy of this Report and Recommendation on Taff by certified mail, and to file proof of service with the court. Any objection to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to me within 10 days of service. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.2d 52, 60 (2d Cir. 1996).

     **SO ORDERED.**

Dated:  Central Islip, New York
        February 10, 2006

                                            /s/ James Orenstein
                                            JAMES ORENSTEIN
                                            U.S. Magistrate Judge